Filed 1/23/25  P. v. Johnson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GLENN MAURICE JOHNSON,<br><br>Defendant and Appellant. | F087417<br><br>(Super. Ct. No. BF100124A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Petitioner Glenn Maurice Johnson petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for second degree murder (§ 187, subd. (a)). The trial court conducted an evidentiary hearing and denied the petition on two alternative grounds: (1) petitioner was not convicted under an imputed malice theory eliminated by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), and (2) petitioner was a major participant in the underlying incident who acted with reckless indifference to human life.

On appeal, petitioner contends the court erred by failing to find, beyond a reasonable doubt, that he committed second degree murder under a valid theory. Alternatively, assuming the court impliedly made such finding, he argues the finding is unsupported by substantial evidence.

We conclude the record reflects petitioner is ineligible for resentencing as a matter of law, and we affirm the denial of the petition on that basis.

## FACTUAL BACKGROUND

We briefly summarize the underlying facts to give context to the parties' arguments, but we do not rely on these facts in disposing of the issues raised on appeal.

In the early morning hours of September 19, 2002, Curtis R. and his cousin, Lamar R., left a nightclub in Bakersfield and later drove in separate cars to a convenience store bordered on one side by a north-south alley, and on another side by an east-west alley. Curtis entered the store but Lamar remained outside talking to some women. After a commotion in the parking lot cleared up, they walked back to their respective cars. As they did so, Curtis saw petitioner and Arthur Lenix, both of whom were known to Curtis. As they passed each other, Curtis patted petitioner on the chest and stated, "[H]ey, man,

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

2.

wake up." Curtis then heard an object hit the ground and Lamar stated, "[H]ey, Curtis, this guy dropped a .38." Curtis saw Lenix pick up something off the ground and place it in his waistband, but Curtis could not see what it was. He told Lamar they should get out of there.

Curtis and Lamar went to their cars and started the engines. D.G. walked up to Lamar's car and opened the passenger door and said they should get out of there because there was a problem with some "East Side" gang members. This remark did not make sense to Curtis because he saw Country Boy Crips gang members at the convenience store but did not see East Side Crips gang members there. Curtis told Lamar they should get out of there and Curtis began driving north down the north-south alley. However, Curtis looked back and saw that Lamar was not backing out of his parking spot, so he began to turn around. As he did so, he saw Lamar and D.G. standing toward the front of Lamar's car, talking. Curtis then saw Lenix walk up behind Lamar, raise a gun, and fire two or three shots at Lamar's head. Lenix and D.G. hesitated momentarily and D.G. gestured as if to take Lamar's car. Curtis accelerated toward them. Lenix fired in Curtis's direction. As he did so, D.G. was running northbound toward Curtis's vehicle and was struck by one of the bullets.

Curtis then saw a red vehicle drive down the east-west alley and stop for Lenix to get in the passenger side. When the car door opened, the interior of the red car was illuminated by the car's dome light and Curtis's headlights. Curtis saw that petitioner was driving the car, which then drove south down the north-south alley.

Lamar died from a single gunshot wound to the head.

A gang expert opined at trial that petitioner, Lenix, D.G., and another individual, M.S., were active members of the Country Boy Crips at the time of the shooting. Curtis had no known gang affiliations. Lamar was documented as a Country Boy Crips member in 1997 but, around that time, law enforcement advised another Country Boy Crips member that Lamar snitched on him.

3.

# PROCEDURAL HISTORY

## I.      Underlying Charges and Convictions

Petitioner was charged with first degree premeditated murder (§ 187, subd. (a); count 1), conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a); count 2), and being an accessory after the fact to murder (§ 32; count 5).  As to each count, the information also alleged a firearm enhancement (§ 12022, subd. (a)(1)), and a prior prison term enhancement (§ 667.5, former subd. (b)).[2]  A jury found him not guilty of first degree murder, but guilty of second degree murder, conspiracy to murder, and accessory to murder.  The jury also found all three firearm allegations true.  (*People v. Johnson* (2004) 119 Cal.App.4th 976, 978 (*Johnson I*); see *People v. Johnson* (2006) 142 Cal.App.4th 776, 786 (*Johnson II*).)

"On appeal after his first trial, we reversed the judgment and ordered a new trial because the court's erroneous instruction on reasonable doubt impermissibly lowered the prosecution's constitutional burden of proof." (*People v. Johnson* (June 17, 2011, F055346)[3] [nonpub. opn.] (*Johnson III*); see *Johnson I*, at pp. 985–987.)

In his second trial, a jury again found petitioner guilty of second degree murder, conspiracy to murder, and accessory to murder.  (*Johnson II*, *supra*, 142 Cal.App.4th at p. 779.)  "On appeal after his second trial, we reversed the judgment and ordered a new trial because the prosecutor's withholding of discovery about his sole eyewitness violated [petitioner]'s constitutional right to due process." (*Johnson III*, *supra*, F055346; see *Johnson II*, at pp. 785–786, 789.)

---

[2] The information alleged additional charges, the disposition of which is not clear from the record.  However, petitioner was not convicted of the additional charges and they are irrelevant to our analysis.

[3] We cite and quote from prior unpublished opinions only to explain the procedural background of the present proceeding and not as legal authority.  (Cal. Rules of Court, rule 8.1115(a), (b).)

In his third trial, a jury again found petitioner guilty of second degree murder, conspiracy to murder, and accessory to murder, and found the arming allegations true as to each count. In bifurcated proceedings, the court found the prior prison term allegation true as to each count. On appeal after his third trial, we struck the arming enhancement to count 3 and the prior prison term enhancements to counts 1 and 3 and otherwise affirmed.[4] (*Johnson III*, *supra*, F055346.)

## II.    Petition for Resentencing

On February 4, 2019, petitioner filed a motion to vacate his conviction pursuant to section 1172.6. On May 30, 2019, he filed a petition for resentencing pursuant to section 1172.6. On August 10, 2020, the trial court denied the petitions without providing a statement of reasons. (*People v. Johnson* (July 11, 2022, F081562) [nonpub. opn.] (*Johnson IV*).) On appeal, we held the court erred in denying the petitions at the prima facie stage because the record did not establish petitioner's ineligibility for resentencing as a matter of law. In so doing, we rejected the People's argument that petitioner's conviction for conspiracy to commit murder established the jury found him guilty of murder under an express malice theory that remains valid after the passage of Senate Bill No. 1437. We noted that the record before us did not contain the jury instructions or admissible evidence regarding the underlying case that would conclusively establish petitioner was guilty of murder under currently valid law. Because the record did not establish petitioner's ineligibility for resentencing as a matter of law, we reversed the order denying the petitions and remanded with directions to issue an order show cause and conduct such proceedings as necessary under section 1172.6, subdivision (d). (*Johnson IV*, F081562.)

---

[4] The prior prison term enhancements arose out of a conviction for possession of cocaine base for sale (Health & Saf. Code, § 11351.5). (*Johnson III*, *supra*, F055346.) The validity of the remaining prior prison term enhancement is not before us. (See § 1172.75.)

On remand, the court issued an order to show cause and set the matter for an evidentiary hearing.

## III.    Evidentiary Hearing

Following remand, the People filed a written opposition to the petition. The People asked the court to take judicial notice of the records in the underlying criminal case, including petitioner's third jury trial, as well as the records on appeal in *Johnson III*, F055346, and *Johnson IV*, F081562. The People argued petitioner's jury found him guilty of second degree murder as an aider and abettor to express malice murder, or as a major participant[5] who acted with reckless indifference to human life.

Petitioner filed a trial brief ahead of the hearing in which he moved to strike the gang expert testimony introduced in his prior trial. Petitioner also objected to the court's consideration of factual statements in this court's prior opinions, briefs filed in the prior appeals, and the probation report. Petitioner argued the jury verdict was not dispositive of whether he was an aider and abettor who acted with intent to kill or a major participant who acted with reckless indifference to human life and that, at the evidentiary hearing stage, the trial court is required to find these facts beyond a reasonable doubt. He argued the only evidence that could support a finding that he aided and abetted the shooting was inadmissible hearsay testimony by the gang expert. He also argued the evidence did not support a finding he was a major participant or acted with reckless indifference to human life.

The court conducted an evidentiary hearing on October 27, 2023. The court admitted into evidence the jury instructions, verdict forms, and trial transcripts from

[5] The People did not indicate the conduct in which they alleged petitioner was a major participant or whether that conduct constituted a qualifying felony for purposes of felony-murder liability under section 189, subdivision (e). As the People now concede, there was no evidence petitioner participated in a qualifying felony and therefore no basis for considering his murder liability under a felony-murder theory that could be supported by major participation in an underlying felony with reckless indifference to human life.

6.

petitioner's third trial, and took under submission petitioner's request to strike the gang expert's testimony. The court stated it would not consider the appellate briefs or probation report but would consider the appellate opinion for the procedural posture of the case. The People presented no other evidence.

The court granted petitioner's request to admit into evidence a transcript of testimony presented in a 2009 evidentiary hearing conducted on a petition for writ of habeas corpus brought by petitioner, as well as images from "Google Earth maps" submitted by petitioner showing the location of the shooting. The court declined petitioner's request to take judicial notice of the verdict form from petitioner's first trial, but stated it was aware of the first jury's findings, which were part of the procedural history of the case.

Petitioner called witness Carla W. to testify at the evidentiary hearing. Carla testified that she dated Curtis from approximately 2000 to 2003. Approximately one week prior to the shooting, Carla was at the same convenience store with Curtis and Lamar when an argument occurred and M.S. popped the hood of his car, retrieved a gun, and pointed it toward Curtis and Lamar. No shots were fired. Carla also went to the same convenience store immediately after the shooting at Curtis's request. At some point, Curtis told her he did not see the shooter and he surmised that the shooter may have been one of a group of people he argued with at the nightclub after they bumped into each other and a drink was spilled.

The People argued petitioner was ineligible for resentencing because he was not convicted under a felony murder or natural and probable consequences theory and the jury instructions reflected the jury found petitioner had a specific intent to kill and aided and abetted in the killing. Petitioner argued the record did not exclude the possibility the jury imputed malice to petitioner and the evidence was insufficient to prove beyond a reasonable doubt that petitioner is guilty of murder under current law.

## IV.     Ruling

The court took the petition under submission and, on December 27, 2023, denied it in a lengthy written order. In its ruling, the court acknowledged its role as fact finder in the evidentiary hearing and the prosecution's burden to prove, beyond a reasonable doubt, that petitioner is guilty of murder under current law. The court went on to state that the "critical determination" in this case was whether petitioner "was a major participant who acted with reckless indifference to human life." (Boldface & capitalization omitted.) In setting forth the applicable law on this point, the court set forth the standard for aider and abettor liability under an implied malice theory and also set forth the standards for major participation and reckless indifference under a felony-murder theory.

In evaluating the merits of the petition, the court first concluded that the petition could be denied because petitioner's jury was not presented with natural and probable consequences or felony-murder theories, and instead was required to find that petitioner personally had the intent to kill, thus establishing that malice was not imputed to him based solely on his participation in a crime. Secondly, the court concluded that the jury's finding, upon proper instructions, that petitioner had committed conspiracy to commit murder established that petitioner was not convicted under an imputed malice theory.

Lastly, the court found, based on the evidence, that petitioner "was an aider and abettor or major participant who acted with reckless indifference to human life when he participated in the incident which le[]d to the death of the [v]ictim and therefore not eligible for relief under [s]ection 1172.6." (Italics omitted.) The trial court determined this finding was supported by the following:

> "The jury found true a number of overt acts which demonstrated an orchestrated series of events. Petitioner was seen with the actual shooter immediately before the shooting and he drove the getaway car in perfect timing to provide the shooter with a quick escape. Such precision must have required that [p]etitioner played a role in planning the shooting. It is uncertain who supplied the gun used in the shooting but after the gun was dropped and picked up by Mr. Lenix, [p]etitioner had to have been aware of

the gun's existence. Petitioner and Mr. Lenix were fellow long-term gang members of the Country Boy Crips and [p]etitioner most likely was aware of the past experience or conduct of Mr. Lenix in prior crimes. Petitioner was at the scene of the killing just prior to the shooting and only left the immediate area to get the getaway car. Petitioner provided the shooter with a means of leaving the area of the shooting quickly. Petitioner did nothing to minimize the risk."

Based on this evidence, the court concluded petitioner "was appropriately charged as an aider and abettor in a murder as a major participant who acted with reckless indifference to human life." Accordingly, the court determined petitioner was ineligible for resentencing and the petition was denied.

## DISCUSSION

### I.  Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).) Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel, supra*, 15 Cal.5th at p. 449.) Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) " 'If the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel, supra*, 15 Cal.5th at p. 450.) However, if the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of . . . attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (*Ibid*.)

"Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the

10.

defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

## II. Petitioner Is Ineligible for Resentencing

Petitioner contends the trial court erroneously denied his petition because the court failed to expressly find, beyond a reasonable doubt, that he was guilty of second degree murder. He argues the trial court instead made "irrelevant" factual findings and did not address the ultimate question of whether he was guilty of second degree murder under a valid theory.

We acknowledge substantive defects in the trial court's ruling. As stated, the trial court erroneously determined that the "critical determination in this case [was] whether petitioner was a major participant who acted with reckless indifference to human life." (Boldface & capitalization omitted.) However, this statement describes a first degree felony-murder theory that was unsupported by the evidence. (See § 189, subd. (e)(3).) The court did not determine that petitioner had participated in any underlying felony that could support such theory.

Moreover, although the court described the applicable standards for aiding and abetting liability under both express and implied malice theories, the court did not expressly find, beyond a reasonable doubt, that petitioner aided and abetted murder under either of these theories. Rather, the court found that petitioner "was an aider and abettor or major participant who acted with reckless indifference to human life when he participated in the incident" and was "appropriately *charged* as an aider and abettor in a murder as a major participant who acted with reckless indifference to human life." (Italics added.) Based on those determinations, the court found "beyond a reasonable doubt, that [p]etitioner *could still be convicted of murder*" under current law. (Italics added.) None of these findings equate to a determination that petitioner aided and abetted the murder with either express or implied malice.

11.

The People do not contend that denial of the petition may be upheld based on the court's finding that petitioner was a major participant who acted with reckless indifference to human life. Rather, the People urge us to uphold the denial of the petition, either because the evidence is sufficient to support an implied finding that petitioner was an aider and abettor who acted with either intent to kill or implied malice, or because the jury instructions and verdict established, as a factual matter, that petitioner was found guilty under a valid theory. Additionally, the People point out that the instructions and verdict establish that petitioner is ineligible for resentencing as a matter of law, a determination the trial court also made.

We decline the People's invitation to consider whether the evidence is sufficient to support factual findings the trial court did not make. However, as we explain, we agree with the People that the jury verdict, when viewed alongside the instructions, establishes that the jury found petitioner guilty as an aider and abettor who acted with malice aforethought, whether express or implied.[6] This finding is binding on petitioner in the section 1172.6 petition process (*Curiel*, *supra*, 15 Cal.5th at pp. 452–453), and renders him incapable of establishing that he "could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)). Although this matter had progressed to an evidentiary hearing where the court ordinarily is required to make its own factual determinations as to petitioner's guilt in the first instance, such fact finding was unnecessary in this instance because the relevant facts were previously resolved adversely to petitioner by the jury.

---

[6] To the extent petitioner suggests such determination is inconsistent with *Johnson IV*, *supra*, F081562, we disagree. Our conclusion in *Johnson IV*, that the record did not establish petitioner's resentencing ineligibility, was based on the record before us, which did not include the jury instructions.

## A. Applicable Law on Direct Aiding and Abetting

" '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea.' " (*Reyes*, *supra*, 14 Cal.5th at pp. 990–991.) An accomplice may be found guilty of aiding and abetting express malice murder committed by another " 'if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends." ' " (*Curiel*, *supra*, 15 Cal.5th at p. 463.) " 'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes*, at p. 991, italics omitted.) Where the life-endangering act aided and abetted is a shooting, the relevant question is whether the aider and abettor knew the perpetrator intended to shoot the victim, intended to aid the perpetrator in the shooting, knew that the shooting was dangerous to life, and acted in conscious disregard for life. (*Id.* at p. 992.)

## B. Jury Instructions Given

To find petitioner guilty of murder, the jury was required to find that he (1) "committed an act that caused the death of another person," and (2) did so with the "state of mind called malice aforethought." Petitioner's jury also was instructed, "If you find the defendant guilty of murder, you must find that murder to be of the second degree."

13.

The jury was instructed on both express and implied malice. The jury was instructed petitioner acted with express malice if he "unlawfully intended to kill." The jury was instructed petitioner acted with implied malice if he intentionally committed an act, the natural consequences of which were dangerous to human life, with knowledge that his act was dangerous to human life, and with conscious disregard for human life.

The jury also was instructed that petitioner could be found guilty of a crime as an aider and abettor. To find petitioner guilty as an aider and abettor, the jury was required to find:

> "1. The perpetrator committed the crime;

> "2. [Petitioner] knew that the perpetrator intended to commit the crime;

> "3. Before or during the commission of the crime, [petitioner] intended to aid and abet the perpetrator in committing the crime;

> "AND

> "4. [Petitioner's] words or conduct did in fact aid and abet the perpetrator's commission of the crime."

The jury further was instructed, "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

Additionally, the jury was instructed on conspiracy to commit murder. To find petitioner guilty of such crime, the jury was required to find:

> "1. [Petitioner] intended to agree and did agree with one or more people to intentionally and unlawfully kill;

> "2. At the time of the agreement, [petitioner] and one or more of the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill;

14.

"3. [Petitioner], or Arthur Lenix, or [D.G.], or all of them committed at least one of the alleged overt acts;

"AND

"4. At least one of these overt acts was committed in California."

The jury further was instructed that it was required to find that "the members of the alleged conspiracy had an agreement and intent to commit murder."

**C.    Analysis**

The verdict establishes the jury necessarily found petitioner guilty under a direct aiding and abetting theory that remains valid after the passage of Senate Bill No. 1437.

We first consider the jury's finding of guilt on the conspiracy count. "Conspiracy to commit murder may be based only on express malice, i.e., an intent to kill." (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 642.) However, where, as here, the jury is instructed that conspiracy to commit murder requires an agreement to "intentionally and unlawfully kill," but the murder instructions include reference to second degree implied malice murder, there is a potential for juror confusion. Such instructions do not necessarily make clear to a jury that conspiracy to commit murder requires the defendant's intent to commit first degree murder. (*Ibid*.; *People v. Swain* (1996) 12 Cal.4th 593, 602.) We therefore hesitate to conclude the jury's conspiracy verdict, standing alone, necessarily establishes the jury found petitioner acted with intent to kill. Even if it did, a jury finding of intent to kill "does not by itself establish any valid theory of [murder] liability." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

We therefore consider the jury's other findings, and specifically the murder verdict, in light of the instructions. We reiterate that the jury was instructed on both express and implied malice. Additionally, to find petitioner guilty of murder under an aiding and abetting theory, the instructions required the jury to find that petitioner knew the perpetrator intended to commit "the crime," intended to aid and abet the perpetrator in the commission of "the crime," and did in fact aid and abet the perpetrator's commission

15.

of the "the crime."  Although the instruction did not specify that "the crime" at issue was murder, the jury was not instructed on any other crimes on which a murder verdict might have rested.  Nor was the jury instructed on felony murder, the natural and probable consequences doctrine, or other theories that may have allowed the jury to impute malice to petitioner based solely on his participation in some crime other than murder.  Nothing in the instructions permitted the jury to convict petitioner under an imputed malice theory eliminated by Senate Bill No. 1437.

Accordingly, petitioner is ineligible for resentencing as a matter of law, and we affirm the order denying the petition for resentencing on that basis.

## **DISPOSITION**

The order denying the petition is affirmed.

DETJEN, Acting P. J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.